IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LINDSEY L. CROOK,

       Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security Administration,

       Defendant.

Case No. CIV-09-199-KEW

## OPINION AND ORDER

Plaintiff Lindsey L. Crook (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See,* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 1, 1977 and was 31 years old at the time of the ALJ's decision. She completed her education through the tenth grade and obtained her GED. Claimant also states that she completed on-the-job training as a certified nursing assistant. Claimant has engaged in past relevant work as a nurse

aide, fast food worker, office helper, order filler, bartender, stock clerk, bagger, and telephone order clerk. Claimant alleges an inability to work beginning September 18, 2005 due to uncontrolled diabetes with related vision problems and peripheral neuropathy causing pain, burning, and swelling in her feet, pain and cramping in her legs, pain in her left arm, and pain and weakness in her hands. Claimant also contends she suffers limitations due to headaches, lack of energy and fatigue, hip pain, and difficulties sleeping as well as stomach problems.

## Procedural History

On February 24, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications for benefits were denied initially and upon reconsideration. On April 15, 2008, Claimant appeared at a hearing before ALJ Edward L. Thompson in Ardmore, Oklahoma. By decision dated July 25, 2008, the ALJ found Claimant was not disabled at any time through the date of the decision. On April 17, 2009, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform work her past relevant work as a nurse aide, fast food worker, office helper, order filler, informal waitress, bartender, stock clerk, bagger, and telephone order clerk.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) ignoring probative medical evidence; and (2) engaging in a faulty RFC analysis.

**Probative Evidence in the Medical Record**

Claimant contends the ALJ failed to consider certain evidence in the record which contradicted his findings on disability. The medical record demonstrates Claimant has suffered from poorly controlled diabetes and its attendant physical effects for which she sought treatment in September of 2004 with Dr. N. D. Emerson. (Tr. 279-82). Claimant suffered significant limitations in her visual acuity as a result of her uncontrolled diabetes.

On May 1, 2007, Claimant was attended by Dr. F. C. Lawrence. Her vision on that occasion was 10/25 OD and 10/60 pinholing to 10/30 OS. Fundus examination showed advanced neovascularization of

both posterior poles, more severe in the left than in the right eye. Claimant also had some lipid exudates near the left macula along with some traction on both arcades. Dr. Lawrence explained to Claimant and her family that Claimant's diabetic retinopathy was severe and that she needed bilateral panretinal photocoagulation as soon as possible. (Tr. 397).

Between May 7 and May 30, 2007, Claimant underwent two laser procedures on both eyes. (Tr. 391-94). The procedures resulted in some improvement. (Tr. 391).

On June 29, 2007, Claimant was examined by Dr. Don Martin, O.D. Dr. Martin found Claimant's best vision correction was 20/30 R and 20/300 L. (Tr. 337). Dr. Martin also found Claimant did not have useful binocular vision in all directions with glasses. He noted Claimant suffered from "significant vision field loss" as a result of diabetic retinopathy. His prognosis for Claimant's condition was "vision decrease due to diabetes." (Tr. 337-38).

On August 14, 2007, Claimant reported to the Mercy Hospital emergency room in Ardmore, Oklahoma. Claimant complained that she could not see out of her left eye. Upon examination, Claimant was found to have 20/40 vision in her right eye and light perception only in her left eye. Claimant reported being unable to read and her vision was "just hazy and blurry." Claimant had a diminished

red reflex in her left eye when compared to her right and had some dark streaks in the vitreous of her left eye. Claimant was diagnosed with a stroke, TIA, detached retina, and progressive retinopathy. (Tr. 375-77). Claimant returned to Dr. Lawrence for treatment of her eye condition on August 27 and December of 2007. (Tr. 388-90, 396).

On January 17, 2008, Claimant suffered a hemorrhage in her left eye and reported suffering blurred vision when her glucose level was elevated. (Tr. 386, 388).

In his decision, the ALJ found Claimant's "visual impairment has not significantly limited her ability to work." He also concluded Claimant's "best corrected vision is a near perfect 20/30 in her better eye; she has a valid driver's license and she reported that she drove short distances." (Tr. 18-19).

Upon questioning by Claimant, the vocational expert testified at the administrative hearing that all of the jobs identified as Claimant's past relevant work required "visual acuity and the ability to read, not necessarily on a constant base (sic), but fairly regularly throughout the day." (Tr. 78).

The ALJ is not required to discuss every piece of evidence. But it is clear that, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the

uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996)(citations omitted). The ALJ failed to consider probative evidence of significant limitations in Claimant's vision - a condition which affects the requirements for the jobs specifically referenced by the vocational expert in his testimony. On remand, the ALJ shall consider the totality of the evidence concerning Claimant's visual limitations.

Claimant also suggests the ALJ failed to consider the evidence of frequent, uncontrolled diarrhea and uncontrolled diabetes upon her ability to engage in gainful employment. In November of 2005, Claimant reported she suffered from six months of diarrhea. Her blood sugar levels were running in the 400's to 500's at that time. (Tr. 284). In May of 2006, Claimant reported she experienced frequent, intermittent diarrhea and could "hardly make it to the bathroom" when she had a bowel movement. (Tr. 298). This problem was also referenced in July of 2006, April of 2007, and May of 2007. Claimant experienced wildly fluctuating blood sugar levels during these times as well. (Tr. 298, 301-09, 350-51, 348-49, 352-53).

When asked to consider the limitations in working brought

8

about by Claimant's frequent diarrhea, the vocational expert testified that if the breaks required by this condition "fell outside of the perimeters of the regular break time they would be excessive and would require accommodation by an employer." (Tr. 78). He also testified that "those type of problems would suggest it would be difficult working directly with the public." Jobs identified as including this requirement included waitress and bartender, "or things like that." (Tr. 78-79).

In his decision, the ALJ discounted any limitations posed by her diarrhea by stating she did not wear adult diapers and that she had dealt with diarrhea since 2005. Given the vocational expert's testimony of the expected limitations caused by this condition, the ALJ erred by failing to consider the full extent of the medical record which supported further restrictions. Additionally, it is clear Claimant's diabetes has not been well-controlled throughout the time encompassed by the medical record. On remand, the ALJ shall consider the totality of the record of her fluctuating blood sugar levels and the effect upon her ability to work.

### RFC Determination

Claimant also suggests the ALJ failed to include all of her limitations in arriving at her RFC. Since this Court has found the ALJ erred in failing to consider probative evidence contained in

the administrative record on certain condition from which Claimant suffered, he necessarily did not consider the full extent of the limitations imposed by these conditions. After considering the complete record on these conditions, the ALJ shall re-evaluate his RFC determination on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 24th day of September, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE